THOMAS W. WARD & another *vs.* WILLIAM B. BRIGHAM & others.

Worcester. January 1. — June 23, 1879. COLT & ENDICOTT, JJ., absent.

Several persons signed articles of association, fixed the amount of the capital stock, chose officers, and issued certificates of stock, intending to form a corporation, under the St. of 1866, *c*. 290, but the association failed to become a corporation. Some of the members of the association subscribed for stock and received certificates therefor, and others did not subscribe. A. and B., two of the subscribers, who had been chosen president and treasurer respectively, took possession of real estate authorized to be purchased by a vote of the association, and carried on the business intended to be carried on by the corporation when formed, as agents of the proposed corporation, borrowing money on their own notes and putting it into the business, with the knowledge of the other members, buying goods from the other subscribers and from persons who had not subscribed, and intending to turn over the business to the corporation upon its organization. *Held*, on a bill in equity by A. and B. against all the other subscribers, as partners, for a settlement of the alleged partnership affairs, that neither the defendants who had subscribed to the stock of the proposed corporation, nor those who had not subscribed, were partners with A. and B.

BILL IN EQUITY brought by Thomas W. Ward and Lyman Belknap against William B. Brigham and forty-nine others, alleging that the plaintiffs and defendants were members of a partnership known as the Milk Producers' Association of Westboro, and entered into an agreement with each other by which they agreed to purchase milk of the individual members and others, and to transport the milk to Boston and there sell the same, and, after paying for the milk and the cost of transporting and selling the same, to divide the profits, if any, among the members; that the business was carried on for a long time by the partnership, and was discontinued about May 1, 1873; that the partnership was largely indebted to the plaintiffs and others, and debts to a large amount were due to the partnership.

The prayer of the bill was, that a receiver be appointed and the affairs of the partnership wound up; that the debts be paid from the partnership property, and, in case that should be insufficient, that the members be required to pay the same; and for further relief.

The answer denied the several allegations of the bill. The case was referred to a master, who reported the facts as found

by him, the material parts of which appear in the opinion, and found that the defendants were entitled to a decree dismissing the bill. The plaintiffs filed exceptions to the master's report.

The case was heard by *Ames*, J., upon the bill, answer, master's report and the exceptions thereto; and reserved for the determination of the full court.

*G. F. Hoar*, (*T. L. Nelson* with him,) for the plaintiffs.

*W. S. B. Hopkins & F. T. Blackmer*, for the defendants.

SOULE, J. It appears from the report of the master that, in the year 1869, the plaintiffs and six of the fifty defendants took preliminary steps towards the formation of a corporation under the St. of 1866, *c.* 290. Articles of association were signed, the amount of the capital stock was fixed at $10,000, and the par value of the shares was to be $25. The name of the corporation was to be The Westboro Milk Producers' Association, and its business was to be carried on at Westboro and at Boston. A first meeting was duly called and held, at which by-laws were adopted, and a president, board of directors, auditing committee, and secretary and treasurer were chosen. The by-laws provide, among other things, that the directors, by vote of the stockholders, might borrow money and give notes and mortgages in the corporate name, and that the president and secretary should sign the same. The plaintiff Belknap was elected president, and the plaintiff Ward was elected a director. Eighteen of the defendants subscribed for stock, and certificates were issued to them according to their several subscriptions, amounting in all to twenty-nine shares, of the par value of $725. The plaintiff Belknap agreed to take, and a certificate was issued to him for, ten shares. The plaintiff Ward took a certificate for two shares. At adjourned meetings votes were passed authorizing the purchase of real estate, and authorizing the directors to borrow $3000, and mortgage the real estate as security for the same. One subsequent meeting of the stockholders was held, or more, and one or more meetings of the directors, and divers votes were passed, the details of which are unimportant, in considering the questions presented by the case. The association failed to become a corporation, because the requirements of the statute were not complied with. The plaintiffs, however, with E. D. White, Jr.

and H. W. Weld, two of the defendants, took possession of the real estate, on which was a cheese factory, and carried on the business of buying milk from the defendants, sending it to Boston for sale, so far as they found a market for it there, and manufacturing the surplus into butter and cheese, which products they sold in market. This was the business which it was intended that the corporation should do. After about a year, Weld ceased to participate in the management, but the plaintiffs and White continued to carry it on until May 1, 1873. The stock of the corporation was never taken up to any considerable extent, and in December 1870, it being known that the association was not legally organized as a corporation, an attempt was made to organize a coöperative association under the St. of 1870, c. 224, but the business was never transferred thereto. The defendants were all in the habit of selling milk to the association, and received payment therefor monthly by checks on a bank in Westboro, signed "Lyman Belknap, Treasurer," and drawn on blanks on the margin of which the words "Westboro Milk Producers' Association" were printed. Money was raised by the plaintiffs, and by White and Weld, defendants, in the year 1869, on their own notes, and by them put into the business, and afterward, on other of their notes, money was borrowed by them and put into the business. Those of the defendants who did not subscribe for stock in the association had no relations with it other than as sellers of milk. The other defendants were aware that the plaintiffs had advanced their own money for conducting the business. The plaintiffs acted in good faith, and regarded themselves as agents for the association, with the intention of turning the business over to it whenever it should become a legally established corporation. The defendants gave no authority to the plaintiffs to act as their agents, unless such authority is to be inferred from the foregoing facts; and never intended to become partners with the plaintiffs, nor to have any other relation to the business than as sellers of milk, except that the eighteen subscribers to the stock of the association expected to be holders of stock in the corporation when it should be legally established. The main purpose of establishing the proposed corporation was to provide a constant market for the milk at remunerative prices to the producers; it not being expected

or intended that the corporation should make any important profits from its business. When the business was closed in the year 1873, and its debts were paid by the plaintiffs, except one month's dues to the defendants for milk, which were never paid, the plaintiffs had paid out about $11,700 more than they had received.

There is no foundation in the facts found by the master for the claim that those of the defendants, who did not sign the articles of association, and did not subscribe for stock in the association, were partners of the plaintiffs. They were merely dealers with the plaintiffs, selling merchandise and receiving payment therefor, at stated times and on terms agreed upon; and, whether the plaintiffs were principals or agents in the matter, those defendants had no part in setting them up in the business, nor in creating the agency. They dealt with the plaintiffs as with any other purchaser, and the fact that the method in which the plaintiffs managed the business and dealt with them gave them substantially the same advantages which the establishment of the proposed corporation was intended to give its stockholders was a mere incident which did not impose on them any new obligations or liabilities. As to those defendants, therefore, the plaintiffs have made no case.

As to the defendants who signed the articles of association, and who subscribed for stock, no partnership with the plaintiffs is established by the facts found, because no such relation was contemplated by any of the parties. On the contrary, it appears that the plaintiffs did what they did for and in behalf of the proposed corporation, as its agents, and with the intention to give the business into its hands whenever it should be legally qualified to take it. In this state of facts, the subscribers to the stock or articles of association are not partners with those who assume the risk of acting for a corporation not yet legally established. They participated in the attempt to form a corporation, for the purpose of avoiding that personal liability for debts which attaches to membership of a copartnership. Those who acted as agents for the inchoate corporation acted without a principal behind them, because there was no body corporate capable of appointing agents, and so became principals in the transaction. Their mistake, though shared by the defendant subscribers to

the stock, does not make those subscribers partners in the business done. *Fay* v. *Noble*, 7 Cush. 188. *Trowbridge* v. *Scudder*, 11 Cush. 83. *First National Bank* v. *Almy*, 117 Mass. 476.

*Bill dismissed, with costs.*