(59 App. Div. 435.)

### CLARK v. RUMSEY et al.

(Supreme Court, Appellate Division, Fourth Department. March 12, 1901.)

1. PARTNERSHIP—JOINT ENTERPRISE—SHARING PROCEEDS—PROFITS.
    Where several persons joined in a written agreement, each to pay a certain definite sum of money to defray the expenses of sinking a gas well, and, in the event that gas was found in paying quantities, to share in the proceeds thereof, if any there were, they did not thereby become partners as to each other, since the agreement did not constitute such a community of profit as to constitute a partnership.

2. SAME—CONTRACTOR—ESTOPPEL.
    Several persons joined in a written agreement, each to pay a certain definite sum to pay for sinking a gas well, and, in the event of gas being found in paying quantities, to share in the proceeds thereof. They appointed a committee of their number, who contracted with plaintiff's testator to sink a well to a specified depth for the sum so subscribed. Gas not being found, some of those signing increased their subscription, and the committee directed the contractor to continue the well. The contractor knew the terms of the agreement, attended nearly all the meetings of the subscribers, and must have known that the defendants refused to add to their first subscriptions. *Held*, that the contractor had no reason to believe that the subscribers were partners, and defendants were not liable for any part of the expense incurred for continuing the work after the amount of their subscription was exhausted.

Appeal from trial term, Niagara county.

Action by William F. Clark, as executor of the will of Thomas Sutton, against Bronson Rumsey and others. From a judgment for plaintiff (52 N. Y. Supp. 417), defendant Rumsey and others appeal. Reversed.

On or about the 2d day of June, 1892, the appellants, together with 15 other parties, entered into a written agreement, of which the following is a copy, viz:

"Buffalo, June 2d, 1892.

"We, the undersigned, agree to pay the sum set opposite our several names to Henry W. Watson, room 100, White Building, whenever called upon, for the purpose of drilling and putting down a gas well on Grand Island, on the property of the Morahuiga Park Land Company, adjoining Sour Spring Grove. If gas is found in paying quantities, each subscriber to this fund is to share in the proceeds or profits of the well in the same proportion as he subscribed for the putting down of the same. Not over $50 is to be paid for the privilege of putting down this well to the owners of the land."

Each of the parties to this instrument subscribed the sum of $100, which created a fund amounting in the aggregate to $2,000. On the 14th day of June, 1892, at a meeting of certain of the subscribers, an organization was perfected by the election of a president, vice president, secretary, and treasurer; and upon the day following an executive committee was appointed, which subsequently entered into a contract with Thomas Sutton, the plaintiff's testator, by the terms of which he agreed to drill a well upon the premises mentioned in the foregoing agreement, which well was not to extend beyond 1,500 feet in depth. As no gas was found when this point was reached, supplementary contracts were made with Sutton, the result of which was that the well ultimately reached a depth of 3,128 feet, the cost of which, according to the terms of the various contracts, amounted to $4,640.70. After the amount originally subscribed was exhausted, several of the subscribers, including the appellant Baethig, increased their subscriptions, in consequence of which the sum of $3,502.30 was realized. This sum was applied towards the payment of the amount due Sutton upon his contracts, which left a balance unpaid of $1,138.40. Failing to obtain any further payments, Sutton brought an action in the supreme court against Henry W. Watson, as treasurer of the company, under the provisions of section 1919 of the Code of Civil Procedure, and in due course of time obtained a judgment therein for the amount of his claim, with costs. An execution was thereafter issued upon such judgment, and, the same having been returned unsatisfied, this action was brought against the subscribers, and a defense was interposed by each of the five appellants above named. None of these appellants attended any of the meetings of the company, and, when called upon for additional subscriptions, they, with the exeception of the appellant Baethig, either refused to respond, or ignored the notices which were sent to them. The issues joined herein were brought to trial at a term of court held in Niagara county on the 16th day of February, 1898; and, a jury having been waived, a trial was had before the justice presiding at that term, who found in favor of the plaintiff for the full amount of his claim, with costs, and from the judgment subsequently entered thereon this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, WILLIAMS, and LAUGHLIN, JJ.

Ansley Wilcox, for appellants.
Charles Hickey, for respondent.

ADAMS, P. J. The theory upon which this action was brought, tried, and determined was that the defendants were liable as copartners for the balance due upon the Sutton contracts; and it is now contended that the subscription agreement of June 2, 1892,

created a joint liability upon the part of the persons signing the same, which established, both inter se and as to third persons, the relation of co-partners. The principal question, therefore, with which we have to deal upon this review, involves the correctness of this contention, and is one which, in so far as it appertains to a co-partnership relation between the subscribers themselves, rests solely upon the fact that by the agreement of June 2d each subscriber to the fund created thereby was "to share in the proceeds or profits of the well in the same proportion as he subscribes for the putting down of the same." It is undoubtedly true, as has been declared by a text writer of undoubted authority, that "partnership is prima facie the result of an agreement to share profits, although nothing may be said about losses, and although there may be no common stock." Lindl. Partn. (4th Ed.) marg. p. 19. But the same author also asserts (what is equally true) that it is inaccurate to say that community of profit is the test of partnership, but that, more properly speaking, it may be said that "whether persons are really partners or not is a question of intention, to be decided by consideration of the whole agreement into which they have entered, and ought not to be made to depend on one or two, only, of the clauses in it." Id. marg. p. 12. Applying, therefore, the rule last stated to the case in hand, it seems quite clear that the respondent's contention, so far as this particular branch of it is concerned, has no satisfactory foundation upon which to rest. So far as the instrument itself is concerned, there is absolutely nothing in its language which by the most liberal construction could be tortured into the declaration of an intention upon the part of the subscribers to establish a co-partnership relation save the single sentence above quoted, and the evidence. dehors the contract absolutely repels any such idea. Not only was there no agreement to share in whatever loss might result from the enterprise, but, so far as these appellants are concerned, they took no part in any of the meetings, and evinced no interest whatever in what occurred subsequent to the signing of the contract. They simply pledged themselves to pay $100 each to defray the expense of sinking a well, and, with the exception of the appellant Baethig, refused to increase their subscriptions or to pay any attention to calls made upon them for further financial aid. Obviously, they regarded the instrument signed by them as a subscription paper, pure and simple, and by their action manifested a purpose to limit their liability to the amounts severally subscribed by them, and not to create a joint liability which should make them jointly and severally liable for any obligation incurred. Nor do we think the language relied upon is fairly open to the construction claimed for it. The contract in question did not contemplate the conduct of a business of a continuous nature, and one which would necessarily or probably result in the earning of profits or the creating of losses; and, although the word "profits" is used with the word "proceeds," we think it cannot be regarded as qualifying the word first used, but, rather, as a redundant expression, which was intended to convey no additional or different meaning. It is a legal maxim that "he who considers merely the letter of an instrument goes but skin deep into its meaning" (Brown,

Leg. Max. p. 658); and in elaborating this most suggestive maxim the learned author says:

"The meaning of particular words, indeed, in statutes as well as in other instruments, is to be found not so much in a strict etymological propriety of language, nor even in popular use, as in the subject or occasion on which they are used, and the object that is to be attained."

Considered, therefore, in this light, we think the agreement entered into by these appellants was simply one to pay certain definite sums of money to defray the expense of sinking a gas well, and, in the event that gas was found in paying quantities, to share in the proceeds thereof, if any there were. This certainly was not such a community of profit as to constitute a partnership. Lindl. Partn. marg. p. 17; Colly. Partn. § 29. And, such being the case, we fail to discover wherein it can be successfully contended that the subscribers were partners inter se.

The view of the question to which we have thus given expression is one which has the support of adjudicated cases in this and many other states, and it is likewise one which we think is founded in reason as well as authority. Hudson v. Spaulding (Sup.) 6 N. Y. Supp. 877; Hall v. Thayer, 12 Metc. (Mass.) 130; Gibbons v. Grinsel, 79 Wis. 365, 48 N. W. 255; Moss v. Wilson, 40 Cal. 159; Davis v. Belford, 70 Mich. 120, 37 N. W. 919; Ward v. Brigham, 127 Mass. 24; Frost v. Williams, 2 S. D. 457, 50 N. W. 964.

We come, therefore, to a consideration of the second branch of the plaintiff's contention, viz. that as to third parties the appellants are liable as co-partners. The theory upon which such a liability arises is that persons who hold themselves out to the world as partners, by dealing in such a manner as to create the appearance of partnership, to the injury of innocent third parties, are estopped from denying that their actual relation is not what their acts would seem to indicate it to be. The rule is thus stated by Collyer on Partnership:

"Persons become liable as partners to third persons either by contracting the legal relation of partners inter se, or by holding themselves out to the world as partners. * * * He who lends his name and credit to the firm is liable for the debts and engagements of the body, * * *" but only "to those who are thereby led to give credit to the firm under that belief." Volume 1 (6th Ed.) § 5.

We think the case is quite barren of any evidence tending to show that Sutton supposed the subscription paper was a partnership obligation, or that he was led to give any credit to these appellants under the belief that they were members of a firm. Indeed, so far as the evidence discloses, he did not even know that they had signed the paper when he entered upon his contract. He did know, however (and this, it seems to us, is quite significant), all about the original subscription and the limit of the subscribers' liability; for he was present when the first four names were signed thereto, and at one time agreed to take two shares in the enterprise, although he subsequently decided not to do so. Moreover, he attended nearly all the meetings, and was, therefore, conversant with the situation of affairs, and must have known who of the subscribers refused to respond to calls for additional payments. In short, he knew quite as

much about the circumstances under which the business was conducted as any other man; and, if the subscribers were not in fact co-partners, it cannot now be claimed with any propriety that he had any reason to believe that they sustained that relation towards each other, or that he was induced to give credit under that belief.

We think that, in so far as the facts found and the conclusions reached by the learned trial court are at variance with the foregoing views, error was committed which requires that a new trial should be granted, and to that end the judgment appealed from must be reversed.

Judgment reversed upon both the law and the facts, and a new trial ordered, with costs to the appellants to abide event. All concur.