MOORFIELD STOREY & others *vs.* JOHN H. BICKFORD & others.

Suffolk. December 2, 1920. — January 11, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Attorney at Law,* What constitutes relation, Ratification of employment. *Partnership. Contract,* What constitutes, Implied.

In an action against several individuals, who were the promoters of an electric railway company, for professional services as an attorney and counsellor at law alleged to have been rendered by the plaintiff to the defendants, the defendants contended that the plaintiff originally was retained by a construction corpora-

tion, the promoter of the enterprise, had continued in its employ and never had been employed by the defendants. The action was heard upon an auditor's report as containing all the evidentiary facts. It was not questioned that, at a time previous to that when the plaintiff contended that his services for the defendants began, he was employed by the construction corporation; but the auditor reported facts which tended to show that a group of the defendants, whom the defendants had chosen as directors, by consultations with the plaintiff, by correspondence, by admissions in printed documents, by the employment of legislative counsel at the plaintiff's suggestion and assurance to such legislative counsel that the plaintiff was general counsel for the defendants and that he might consult the plaintiff as such, as he did, and by other acts recognized the plaintiff as counsel for the defendants, and that, at a special meeting of the defendants as associates for the incorporation of the company, at which all the defendants were present in person or by proxy, it was voted that the acts of the directors "in conducting the negotiations and business of the Association in promoting, furthering and assisting in the organization of this Association, be and the same are ratified, approved and confirmed as the Acts of this Association." *Held*, that a finding was warranted that the directors engaged the plaintiff's services and that their acts in so doing were fully ratified and approved by all the defendants, although some of them never saw, talked with, or wrote to the plaintiff.

At the hearing of the action, above described, it appeared that payments made to the plaintiff were made by checks of the construction corporation which, the defendants contended, was the plaintiff's employer; but the auditor found that the legislative counsel, who was admitted to have been acting for the defendants, also had been paid by checks of the construction corporation, and that, when he inquired of one of the defendants, who was the treasurer of the construction corporation, "Who are these people?" he was told "I don't suppose it makes any difference to you as long as you get your money;" that proceeds of the financing by the defendants through discounting of their notes were paid to one of the defendants who also was treasurer of the construction corporation, with other money borrowed by the defendants, and that, in a letter to the plaintiff from the treasurer of the construction corporation enclosing its check, he stated that the check was "on account of the bill against the . . . Railway Co. The balance of your bill . . . I hope to send next week." *Held*, that the evidence did not as a matter of law require a finding that the plaintiff's services were rendered to the construction corporation and not to the defendants.

The defendants at the hearing of the action above described by a judge without a jury asked for a ruling that "The signers of an agreement of association to form a corporation under the provisions of St. 1906, c. 516, are not as such, and on that account only, personally liable for legal services performed by attorneys retained by Directors elected by the associates to aid in the acquisition of a charter." The judge in substance assented to the ruling in terms, but added "In this case, I deem the question whether there was an implied promise on the part of the defendants to pay for the plaintiff's services to be one of fact to be determined in the light of all the evidence, including, of course, the articles of association." *Held*, that the ruling was sufficiently favorable to the defendants.

St. 1906, c. 516, § 3 (*i*), providing in substance that no subscriber shall be bound to pay more than ten per cent of the amount of his subscription unless a company is incorporated, deals with the obligation a subscriber is under to pay for the shares of stock subscribed for, and not with an obligation he may have

assumed as an individual to pay for legal services rendered to him and others as promoters of the enterprise.

CONTRACT upon an account annexed for professional services as attorneys and counsellors at law, alleged to have been rendered to sixteen individuals named as defendants, who were "Promoters of the Boston and Eastern Electric Railroad Company." The defendants on whom service was made were John H. Bickford, Arthur Sturgis, William H. Gove, Melville Woodbury, William S. Nichols, Fred A. Norton, John H. Linehan, Harry P. Graves, George C. Vaughn and William E. Bixby. Writ dated April 16, 1914.

In the Superior Court, the action was referred to an auditor and, upon the filing of his report, was recommitted to him for a further report. Material facts found by him in his reports are described in the opinion. The parties agreed that the auditor's reports recited all evidentiary facts, that the action might be heard by a judge without a jury on the auditor's reports and that the plaintiffs, if entitled to recover against any or all of the defendants, were entitled to recover the amount found by the auditor with interest to the date of judgment.

The action thereupon was heard by *McLaughlin,* J., without a jury. The substance of findings and rulings asked for by the defendants, the rulings of the judge thereon and the exceptions saved by the defendants are described in the opinion. The judge found for the plaintiffs in the sum of $12,469.62; and the defendants alleged exceptions.

*J. W. Morton,* for the defendants Gove and others.

*E. S. Abbott,* for the defendants Linehan and Bixby.

*B. B. Jones,* for the plaintiffs.

CARROLL, J. This is an action of contract to recover for legal services. The case was heard on the auditor's report and the trial judge found for the plaintiffs. The defendants upon whom service was made subscribed to an agreement dated July 23, 1906, to form an electric railroad company under St. 1906, c. 516, to connect Beverly and Boston and to be known as the Boston and Eastern Electric Railroad Company. The defendants are hereafter referred to as the Associates. The defendants Nichols, Bickford and Gove were three of the directors named in the agreement.

The undertaking was an important one involving a large expenditure of money and surrounded by many difficulties. Valuable professional services were performed by the plaintiffs from October, 1907, to March, 1913. The defendants contend that they did not employ the plaintiffs and are not liable on the facts found by the auditor; that the plaintiffs were originally retained by the Atlantic Securities Company, afterwards called the Bickford Construction Company, the promoter of the enterprise, and continued in the employ of this company, and that the Associates were at no time the plaintiffs' clients. It was not questioned that in October or November, 1905, the plaintiffs were retained by the Atlantic Securities Company and continued to act for this company and the Bickford company until 1907; but on the finding of facts by the auditor there was evidence to warrant the judge in concluding that the services sued for were not performed as the attorneys of the Atlantic Securities Company or the Bickford Construction Company, but as the attorneys of the Associates. Many facts bearing on this branch of the case were found by the auditor. When the railroad commissioners refused to grant a certificate of exigency until authority was given to construct a tunnel under Boston Harbor, it became necessary to procure the passage of such an act. The plaintiffs did not take up this work, but recommended Charles S. Baxter. In a letter signed, "Associates for the formation of the Boston & Eastern Electric Railroad Company," Mr. Baxter was retained by three of the directors and it was admitted that he became the legislative counsel of the Associates. He was told by one of the directors in the presence of Nichols and Bickford that the Storey firm were the general counsel for the Associates and that he could have the assistance of that firm in all legal matters; and thereafter he frequently consulted the plaintiffs as the defendants' counsel. On the records of the directors, it appeared that the plaintiffs were recognized as the attorneys of the Associates. In a pamphlet printed in February, 1911, entitled "Chronological Record of the Boston & Eastern Electric Railroad," reference is made to the "Boston & Eastern counsel," counsel for the petitioners, and that he presented arguments. There was also much correspondence indicating that the directors recognized the plaintiffs as their attorneys.

Stress is laid by the defendants on the fact that payments were made by checks of the Bickford Construction Company. Baxter was also paid by checks of this company, and when he inquired of Bickford, "Who are these people?" he was told, "I don't suppose it makes any difference to you as long as you get your money." In 1910 it was voted by the directors of the Associates to raise $15,000 by promissory notes. The notes were discounted and the proceeds paid to Bickford as the treasurer of the construction company. Additional money was borrowed by the directors and paid to Bickford, and in a letter of December 7, 1907, to the plaintiffs from W. S. Nichols, then treasurer of the construction company, in which was enclosed a check of the Bickford Construction Company for $300, it was stated that the check is "on account of the bill against the Boston & Eastern Electric Railway Co. The balance of your bill to October 1st, I hope to send next week." The fact that payments were made by the checks of the Bickford Construction Company, in view of all the circumstances, is insufficient to show that the plaintiffs' services were performed for that company.

There was some evidence tending to support the defendants' contention that they were not the clients of the plaintiffs, but there was ample evidence from the facts found to support the finding of the trial judge.

The defendants further contend that the employment of the plaintiffs was not assented to by the defendants and that they cannot be held to pay. After the agreement of association was signed many hearings were had before different bodies, the original plans were changed and a number of meetings were held. As early as 1907 the directors ratified and approved a letter of the plaintiffs to the railroad commissioners, wherein it was stated that the plaintiffs were acting for the directors. Gove, Nichols, Woodbury and Sturgis attended the hearings before the railroad commissioners. Bickford testified before the auditor that his habit was to consult with the directors before going ahead with important matters. There was other evidence tending to show that these directors assented to the employment of the plaintiffs as their counsel, and that they were at the time acting for the Associates. In addition to this, at a special meeting of the Associates on December 29, 1911, at which all of the defendants were

present in person or by proxy, it was unanimously voted: "That the Acts of the Board of Directors and Chief Engineer, in conducting the negotiations and business of the Association in promoting, furthering and assisting in the organization of this Association, be and the same are ratified, approved and confirmed as the Acts of this Association." Although the defendants Linehan and Bixby never "personally saw, talked with, or wrote to the plaintiffs," Linehan was personally present and Bixby by proxy at this meeting, and the acts of the directors in engaging the services of the plaintiffs were fully ratified and approved by all the Associates and the defendants were bound by this ratification, even if they did not originally assent to the employment of the plaintiffs. As has been shown, there was evidence that the plaintiffs were acting for the directors and the directors were acting for the Associates. The vote of ratification, therefore, was an approval of their acts performed while acting as agents of the Associates. See in this connection *Dempsey* v. *Chambers*, 154 Mass. 330. The directors being the agents of the Associates, their knowledge was constructive notice to the Associates. *National Security Bank* v. *Cushman*, 121 Mass. 490.

The defendants rely on *Fay* v. *Noble*, 7 Cush. 188, *Trowbridge* v. *Scudder*, 11 Cush. 83, *First National Bank of Salem* v. *Almy*, 117 Mass. 476, *Ward* v. *Brigham*, 127 Mass. 24. None of these cases is applicable to the case at bar. The Associates did more than merely sign the agreement of association, and they did not attempt at any time to do business as a *de facto* corporation. They acted as an association in doing the work preliminary to their becoming a corporation. The plaintiffs were engaged by their agents for this purpose, and as such an association they ratified the acts of their agents. See *Munson* v. *Syracuse, Geneva & Corning Railroad*, 103 N. Y. 58, 75; *Roberts Manuf. Co.* v. *Schlick*, 62 Minn. 332; *Wells* v. *Fay & Egan Co.* 143 Ga. 732.

The defendants made this request: "The signers of an agreement of association to form a corporation under the provisions of c. 516 of the acts of 1906 are not as such, and on that account only, personally liable for legal services performed by attorneys retained by directors elected by the associates to aid in the acquisition of a charter." The judge found and ruled, "I adopt as applicable to this case the view which it seems to express that

the signers of an agreement of association to form a corporation under the provisions of c. 516 of the acts of 1906 are not, as matter of law, or to quote the language of the request 'are not as such, and on that account only, personally liable' for services rendered under the conditions stated. At least, this is true where, as in this case, other and additional evidence is introduced tending to show fully the acts of the parties, their relations to each other during a long period of time, their statements written and oral and entries in the nature of admissions. . . . In this case, I deem the question whether there was an implied promise on the part of the defendants to pay for the plaintiffs' services to be one of fact to be determined in the light of all the evidence, including, of course, the articles of association." This was sufficiently favorable to the defendants. See *Sproat* v. *Porter,* 9 Mass. 300.

St. 1906, c. 516, § 3 (*i*), provides that no "subscriber shall be bound to pay more than ten per cent of the amount of his subscription unless a company is incorporated." This section deals with the obligation a subscriber is under to pay for the shares of stock subscribed for. The plaintiffs' claim is not against the corporation and is not affected by this provision of the statute. It does not deprive the Associates or their directors of authority to contract for themselves and agree with the plaintiffs to be personally liable for the services performed. It also appeared that a certificate of incorporation was in fact issued February 1, 1913. The statute, therefore, does not deprive the plaintiffs of their right of compensation.

There was no error in refusing the defendants' requests or in the conduct of the trial.

*Exceptions overruled.*