## ANGIE V. KINGSLEY v. CHARLES E. ENGLISH AND OTHERS.[1]

February 25, 1938.

No. 31,395.

*Stinchfield, Mackall, Crounse, McNally & Moore, Leslie L. Anderson,* and *Robert Kingsley,* for appellant.

*Shearer, Byard & Trogner,* for respondents.

[1]Reported in 278 N. W. 154.

HILTON, JUSTICE.

In June, 1918, the Thompson Construction Company, a Minnesota corporation, was incorporated by H. J. Thompson, Lewis E. Streater, and Frank J. Morley. Its principal place of business was Darwin, Minnesota, and its sole purpose was to finance Thompson in a contracting business. The defendant English was majority stockholder and chief executive officer of the Midland Lumber & Coal Company, which owned and operated a chain of retail lumber yards throughout this territory. His company furnished Thompson with lumber and building materials, and for this reason apparently defendant English was interested in the formation of the Thompson Construction Company. He was not an incorporator of the latter, but did purchase stock therein shortly after the company was organized and was elected treasurer thereof. Neither Mr. Kingsley, deceased, nor any of the defendants in this action, other than English, were interested in the Thompson Construction Company.

In 1919 the corporation quit business. The three incorporators and English, who were the only stockholders, had all purchased their stock by giving their notes, which were unpaid. They surrendered their stock and received back their notes. The stock certificates were mutilated and attached to the stock book. The latter, and all other books of the corporation, were turned over to the defendant English.

In May, 1925, the United States National Bank of Superior, Wisconsin, acquired a lath mill located at Gordon, Wisconsin, through failure of the owners of the mill to pay an indebtedness to the bank. Defendants Wentzel and Gates were connected with the bank. They consulted English, and he suggested that Mr. Kingsley, then of Minneapolis, be secured to manage the lath mill and the sale of its products. After he was approached, Mr. Kingsley investigated the mill and its property and agreed to take over and supervise the business.

English suggested the use of the Thompson Construction Company for the purpose of running the lath mill. There was no attempt to secure a formal transfer or assignment of the corporate

charter and franchise from the original incorporators, and no attempt was made to secure permission from the state of Wisconsin to do business there. However, stock was issued from the old stock book of the Thompson Construction Company to Mr. Kingsley and the defendants Gates, English, Wentzel, and McLaggan. The latter was manager of a yard belonging to the Midland Lumber & Coal Company and later acted as disbursing agent for the lath business. What purported to be a stockholders' meeting was held, and Kingsley, Wentzel, English, and McLaggan were elected directors. The latter thereupon elected officers of the Thompson Construction Company. Mr. Kingsley was elected president and general manager, and it was agreed that he was to have a commission of five per cent on the net selling value of the lath for his services. At this meeting the officers of the company were authorized to purchase the mill from the bank, giving the notes of the Thompson Construction Company therefor, and Kingsley was authorized to borrow up to $3,000 on behalf of the company. Minutes of these proceedings were kept in corporate form. It does not appear that any other meeting of stockholders or directors was ever held.

All of the stock subscribers gave notes for their stock, which were never paid. The mill was acquired in the manner specified. Mr. Kingsley opened an account in the United States National Bank in the name of the Thompson Construction Company. He prepared and furnished the bank with financial statements of the company in corporate form. He conducted several hundred financial transactions with the bank connected with the sale of lath and the borrowing of money. In all these and many other transactions, he purported to act as president and manager of the Thompson Construction Company, a corporation, and conducted the business throughout as a corporate enterprise. Just to what extent the defendants were active in the affairs of the business is not entirely clear, but under the view we take that fact is immaterial.

The enterprise was a losing proposition from the outset. The indebtedness to the bank steadily increased. Mr. Kingsley advanced a considerable sum of personal funds in an effort to make the busi-

ness pay, but to no avail. Shortly after his death in January, 1928, the company was placed in bankruptcy.

The bankruptcy proceedings were conducted on the theory that the Thompson Construction Company was a valid and legally existing corporation. In 1928 plaintiff, as administratrix of the estate of Mr. Kingsley, filed a claim in the bankruptcy proceeding against the corporate bankrupt, but subsequently withdrew the same. In 1933 she commenced this action to recover $19,989.28, alleging that this amount represented unpaid commissions and moneys advanced to the business by Mr. Kingsley. The action was brought on the theory that the Thompson Construction Company was a partnership and that the defendants are individually liable as surviving partners. No service was obtained on defendants Gates and Mc-Laggan, and the trial judge made findings of fact and conclusions of law for the defendants English and Wentzel. He was of the opinion that Mr. Kingsley, and plaintiff as his administratrix, were at all times estopped to deny the corporate character of the Thompson Construction Company. Plaintiff takes this appeal from an order denying her motion for a new trial. While somewhat condensed, the facts as stated are sufficient for present purposes.

Since we are of the opinion that the result reached below is correct, we will follow the course adopted by the learned trial judge and pass, without decision, the question of whether the Thompson Construction Company had a *de jure* or *de facto* existence in the Wisconsin enterprise. There is considerable authority supporting the conclusion that plaintiff, as the representative of Mr. Kingsley, is estopped to deny the valid existence of the Thompson Construction Company as a corporation. Broadly stated, the general rule is that the members of a pretended corporation, active as officers and directors thereof, are estopped to deny its valid existence for the purpose of holding the stockholders or members liable to contribution as partners, or for the purpose of holding them personally liable on contracts made by such officers with the corporation. 8 Fletcher, Cyc. Corp. (Perm. ed.) § 3941; 14 C. J. p. 239, § 262. In Foster v. Moulton, 35 Minn. 458, 29 N. W. 155, a member of a defectively organized mutual benefit association was attempting to

maintain an action as such a member against the original signers of the articles of association as individuals. It was held that he was estopped from attacking the validity of the association's organization, and that, as between the members, it was to be regarded as a corporation *de facto,* irrespective of what it might be in an action against it by a stranger. The instant case is much stronger. It was as much the duty of Mr. Kingsley as of his associates to see that proper steps were taken to assure the legal incorporation of the Thompson Construction Company. More important still is the fact that he was the active head and manager of the business, and throughout its operation held it out and represented it to be a corporation. This was the assumption upon which all the parties acted, and his representative, occupying the same position as he, should not be heard now to say that it was otherwise.

The same result is reached by simply referring to the implied agreement of the parties and giving it effect. It is apparent from the evidence disclosed that those connected with the Thompson Construction Company contemplated the doing of a corporate, and not a partnership, business. As between themselves, the rights and liabilities of the parties should be determined and governed by the terms, conditions, and limitations contemplated by their agreement. Mr. Kingsley was a party to this business arrangement from the outset, and no fraud on him is claimed. He fully understood the nature of the business to be conducted and the means to be adopted therefor. The agreement for his commission was made with the Thompson Construction Company as a corporation, and not with the defendants as individuals. He advanced funds to the company and undoubtedly expected to be repaid from its profits, but neither he, nor the defendants, understood that the latter were to be individually liable for their proportionate share of those loans. Such liability cannot be imposed contrary to the agreement of the parties. One of the main purposes of doing business as a corporation is to avoid personal liability for debts. There is nothing to prevent those associating together in business from limiting their liability as they see fit, and as between themselves their agreement is binding irrespective of the rights of third parties. There is no partnership un-

less there is an agreement to be partners. Cannon v. The Brush Elec. Co. 96 Md. 446, 54 A. 121, 94 A. S. R. 584; Ward v. Brigham, 127 Mass. 24; Lyons v. Van Oel, 183 Iowa, 114, 165 N. W. 376, 378. In the latter case the court said (183 Iowa, 120):

"Partnership is a contractual relationship, and has its basis and foundation on contract between the parties. It takes two parties to make a contract. What parties contract to do, that is what they are bound to do, in law. What they agree among themselves to be, that is what they are, in contemplation of law, as between themselves. It was never contemplated here that these parties should assume any partnership relationship, nor is there anything in the contract to suggest that it was the thought of any of the parties to it that a partnership relationship was created or would exist, or that rights and duties were created between them as such."

Mr. Kingsley and the defendants acted on the assumption that the Thompson Construction Company was a validly organized corporation with a legal existence, and understood that their rights, liabilities, and duties were limited accordingly. This was at least an implied term of their arrangement, and it is controlling in an action between them.

Affirmed.

MR. JUSTICE STONE, because of illness, took no part in the consideration or decision of this case.