LEWIS L. WHITMAN *vs.* WILLIAM G. McINTYRE & others.

Hampden.    March 23, 1908. — June 19, 1908.

Present: MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Assignment,* For the benefit of creditors. *Trust.*

The plaintiff in a suit in equity, brought by one, who had assigned a distillery plant to assignees for the benefit of his creditors, against the assignees for an accounting, contended that the assignees had not conducted the business in a prudent and businesslike manner, had wrongfully employed one C. to manage it, and had wrongfully sold it to a corporation for less than it was worth, receiving in payment shares of the capital stock of the purchasing corporation instead of cash. One of the terms of the assignment was that the assignees should carry on the business if they could do so at a profit, and at the end of a year could sell it and convert it into money if at that time they found the condition of the estate to be such that the assignor's debts could not be paid without a sale. A master to whom the case was referred found that there was no actual fraud on the part of the defendants in any respect and that they had not attempted to profit in any improper way at the expense of the estate; that the appointment of C. was agreed to by the plaintiff, and that, in making it, the defendants had acted wisely and for the best interests of the estate, and that C. had acted honestly; that at no time after the assignment was made had the assets been enough to pay the claims of the creditors who had become parties to the assignment, that at the end of a year a fair value of the estate did not exceed $20,000, that thereupon the defendants sold the entire business to a distilling company, taking in payment two hundred shares of the capital stock of the company which was worth from $75 to $100 per share, that the creditors who had become parties to the assignment had consented to the sale, and had agreed to take proportional parts of the shares of stock reserved from the sale in payment of their claims. *Held,* that the bill must be dismissed, since it did not appear that any of the acts of the defendants were wrongful or that their con-

duct of the business was unbusinesslike; and since, as to the receipt of shares of stock instead of cash for the sale of the business, the facts, that the proceeds of the sale were insufficient to pay the creditors, that therefore no balance could have been paid to the plaintiff, and that the creditors were content with the stock in lieu of cash, made the sale in effect one for cash so far as the creditors, who were the only parties in fact interested in its proceeds, were concerned.

The owner of a distilling business assigned it for the benefit of his creditors to three persons, two of whom were presidents of two banks who were creditors, and the third the cashier of a third creditor bank. Among the terms of the assignment were provisions that the assignees should carry on the business if they could show a profit, and that, if after a certain time no profit was shown, they might sell it. The assignees, acting with prudence, gave one C. a power of attorney to conduct the business for them, and, the business not showing a profit in the specified time, sold it for a fair price to another distilling company, the purchase price being paid in shares of the capital stock of the purchasing company. At the time the sale was made, C. was a stockholder in the purchasing company and, to carry out the sale, an increase of $5,000 in its capital stock was voted by the purchasing company and its by-laws were changed by making its board of directors nine instead of seven. C. and one of the assignees, before the execution of the deed of sale, subscribed for $5,000 of the new stock and were elected directors of the purchasing company. The assignor brought a bill in equity against the assignees and the purchaser to set aside the sale, and a master to whom the suit was referred found that the assignees had acted honestly and had gained no advantage from the transaction, and that the assets in their hands never were sufficient to pay the claims of the creditors who had assented to the assignment. It did not appear that the purchase of stock by, and the election as directors of the purchasing company of, C. and one of the assignees was a part of the contract of sale to that company, but it did appear that all of the creditors who had assented to the assignment acquiesced in the sale as made and in the purchase of stock by, and the selection as directors of, C. and the assignee. *Held*, that, although the general rule is well settled that a trustee cannot directly or indirectly himself be a purchaser of the trust property or derive any personal advantage or profit from its management, the facts did not bring this case within such rule, and the bill must be dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Hampden September 28, 1899, by one, who made an assignment for the benefit of his creditors, against William G. McIntyre, William F. Callender, E. Dudley Chapin, the assignees, and others as stated in the opinion, for an accounting.

The case was referred to a master, who filed a report and a supplemental report, to which exceptions were filed by the plaintiff's executor, who, on the death of the plaintiff, had been admitted to prosecute the suit. There was a hearing on the exceptions before *Hammond*, J.. who reserved the case for consideration by the full court.

The facts are stated in the opinion.

*H. F. Buswell,* (*M. H. Browne & J. M. Browne* with him,) for the plaintiff.

*C. C. Spellman,* for the defendants.

MORTON, J. This case was reserved for the full court by a single justice on the pleadings, the master's report and supplemental report and the exceptions thereto — such decree to be entered "as equity may require."

The bill is a bill to compel an accounting by the defendants McIntyre, Callender, and Chapin as trustees under a deed and assignment made to them by the plaintiff for the benefit of his creditors, and by one Coats, who is alleged to have been wrongfully employed by them to carry on the business of the trust. It also seeks to set aside a conveyance made by the trustees to the Gowdy Distilling Company, the other defendant, and to have the property reconveyed to the plaintiff. The plaintiff has deceased since the suit was begun and it is prosecuted by his executor.

The principal part of the property conveyed to the trustees consisted of a distillery in Agawam carried on by the plaintiff under the name of the H. Porter Company, and of the personal property belonging to and connected therewith. The assignment * provided, amongst other things, that the trustees could carry on the distillery if they could do so at a profit, and, if at the end of a year they found that the condition of the estate was such that the debts could not be paid without a sale of the property, then they could sell it and convert it into money. The trustees came to the conclusion at the end of the year, and rightly, as the master has found, that the condition of the estate required that the property should be sold, and after some negotiation they sold the distillery to the Gowdy Distilling Company, receiving in payment therefor two hundred shares of the capital stock of that company of the par value of $100 each. The plaintiff alleges in substance that the trustees did not conduct the business in a prudent and businesslike manner or in accordance with the terms of the trust; that they wrongfully agreed with Coats to carry on the business of the distillery; that the debts could have been paid or reasonably provided for without a sale of the distillery; that the sale to the Distilling Company

---

* The assignment was dated December 1, 1897.

was fraudulent and collusive and was voidable by reason of the fact that Chapin and Coats were directors and stockholders in that company; that the sale was not for money as according to the terms of the assignment it should have been; and that what was received for the sale and conveyance was much less than the value of the property conveyed. The plaintiff also contends that the trustees were negligent in not making some arrangement for payment by the banks where they were deposited of interest on the trust funds, and in not providing for the sale and application of certain collateral from which the dividends received were less than the rate of interest on the notes and demands secured by the collateral.

It will be seen that the most of these contentions and objections relate to matters of fact. In regard to such matters the master's findings will not be disturbed unless clearly erroneous.

The master finds generally " that in connection with the appointment of the attorneys,* the conduct of the business, the sale of the distillery and other property, and the management of the trust generally, there was no actual fraud, bad faith or collusion on the part of the defendants, or any attempt to profit in any improper way individually or collectively at the expense of the estate, or against the rights of the plaintiff." He finds more particularly in regard to the appointment by the trustees of the firm of E. M. Coats and Company as their agents and attorneys for the purpose of carrying on the distillery, and managing the business, that the appointment was agreed to by Whitman, and that in making the appointment " the trustees acted wisely, in good faith and for the best interests of the estate, and in the performance of the duties assigned to them, the said firm and the defendant Coats have dealt honestly with all parties concerned and without any improper advantage to themselves." We see nothing to impugn the correctness of these findings.

It cannot be said, we think, that the trustees managed the trust in an imprudent and unbusinesslike manner and the mas-

---

* The "attorneys" here referred to were the firm of E. M. Coats and Company, wholesale and retail liquor dealers in Springfield, of which the defendant Coats was a member. The trustees executed a power of attorney, authorizing them to carry on the business for the trustees. The power by its terms was revocable at any time without notice.

ter has not so found. The parties, and especially the plaintiff, may have been disappointed, as not infrequently happens in such cases, in their expectations as to the amount of the estate and what would be realized from it. But that furnishes no ground, of course, for holding the trustees liable. At the time the distillery was taken over by the trustees, it was being operated at a loss, and was very much run down and out of repair. It was thought that, by making necessary repairs, it could be brought up to a state of efficiency and a profit made, and the trustees expended a considerable sum upon repairs. The master has found that the expenditure was necessary and proper. The trustees were disappointed in making a profit; but there is nothing to show that they did not exercise a sound business judgment in what they did, or that in selling the product or disposing of any of the other property the estate suffered any loss in consequence of what they did or omitted to do. We do not think, therefore, as already observed, that it can be said that the trustees did not carry on the business in a prudent and businesslike manner.

As to the sale to the Gowdy Distilling Company, the master finds that the stock of that company was worth at the time of the sale from $75 to $100 per share, and that the property conveyed did not exceed in value $20,000, including the good will and the trademark, which he finds was once valuable, but, owing to changes in the conditions of business, had lost most of its value. He also finds that at no time would the assets have been sufficient to meet the outstanding claims of the creditors who had become parties of the third part to the assignment, and who, with the plaintiff, were the only parties interested in the sale, so as to leave any balance payable to the plaintiff. And he finds still further that the creditors aforesaid consented to the sale and agreed to take their proportional part of the stock on account of and in payment of their respective claims. As to them, therefore, the sale was in effect a sale for money and the plaintiff has no just ground for complaint that the sale was for stock in the Gowdy Distilling Company and not for money, even if we assume that the sale could not otherwise be fairly regarded as a sale for money.

We see no ground on which the sale can be avoided by the

plaintiff because of the relation of Coats and Chapin to the transaction.  The general rule is well settled that a trustee cannot directly or indirectly himself be a purchaser of the trust property or derive any personal advantage or profit from the management of the estate.  But in the present case Coats occupied no fiduciary relation whatever to the plaintiff, and, so far as he acted as agent and attorney for the trustees, the master has found, as already observed, that he dealt honestly with all parties concerned.  Chapin was trustee under the assignment, and if he had purchased the property for himself directly or indirectly or for the bank of which he was cashier,* the plaintiff could have the sale set aside, or if he had derived any personal profit or advantage from the management of the estate he could be compelled to account for it.  But the sale was not to Chapin nor to the bank, but was to the Distilling Company.  The terms of sale were agreed upon between the trustees and the directors of the Distilling Company with the consent and approval of all other parties interested except the plaintiff.  Chapin was not a director of or a stockholder in the Distilling Company at the time when the terms of the sale were agreed upon.  He was elected a director before the deed was executed, presumably to represent the interests of his bank which was a creditor and of other creditors and he became a stockholder.  Coats, who was a stockholder in the Distilling Company and a large creditor of the plaintiff, was also elected a director at the same time.  The master does not find that it was understood and agreed as a part of the terms of the sale that Chapin should become a stockholder in and should be elected a director of the Distilling Company, and we are not called upon, therefore, to consider what the effect, if any, of such a finding would be.  The sale could not be carried through unless the capital stock of the Distilling Company was increased, and at some time, it does not appear when, except that it was before the execution of the deed, Chapin and Coats undertook to provide for $5,000 of this increase † and

* Chapin was cashier of the John Hancock National Bank, Callender was president of the Chapin National Bank and McIntyre was president of the Hampden Trust Company.  All three of the banks were creditors of the plaintiff before the assignment was made.

† The total increase was $25,000.

Chapin agreed to take personally some of the stock. Coats took $2,500 of the $5,000 and Chapin the balance, which he obtained from his bank. Subsequently, on a final settlement of the matter between him and the bank, the bank took twenty shares of the stock and Chapin took the remaining five for which he paid the bank. There is nothing, we think, in these transactions or in the other circumstances attending the sale, which gives the plaintiff the right to have the sale avoided. The trustees sold the property as they had the right and it was their duty to do. The sale was approved by all parties interested except the plaintiff. He was not consulted, possibly because his condition was such that it would have been useless to consult him.* There is no reason to believe, if that is material, that the failure to consult him operated to his detriment. The trustees did not advertise the property, but there is nothing to show that it could have been sold on any more favorable terms, or that all parties concerned acted otherwise than in entire good faith. The master finds that at the date of the assignment Whitman was insolvent, and that at no time since have the assets been sufficient for the payment of his debts. The estate belonged, therefore, to his creditors. The trust was a creditor's trust. Presumably Chapin was selected as one of the trustees because his bank was a creditor. In a sense, therefore, the interests which he represented were adverse to those of the assignor. *Prevost* v. *Gratz*, Pet. C. C. 364, 373. And if the creditors, knowing all of the facts, as the master in effect finds that they did, were content that, in addition to being trustee under the assignment, Chapin should also act after the sale had been agreed upon as a director of the purchasing company, and should become a stockholder therein, we cannot see that his doing so or the fact that he became the owner of shares in the Distilling Company after he was elected a director affords any ground for avoiding the sale.

In regard to the matter of interest, the master reports that in his opinion " the trustees should have made provision for the

---

* The defendant Callender, when asked whether he did not think it was his duty as a trustee to lay the matter before Whitman, replied, "If you want to have me answer that question frankly, I will. I shall have to say that, as I read Mr. Whitman and knew him, I don't think it would make any practical difference in my opinion whether I consulted him or not."

payment of interest on these deposits, and possibly by the application of funds on hand they might have reduced the loans to some extent, but not having sufficient data before me, I am unable to determine what the amount of such interest should be, or to what extent the loans might have been reduced. But I am satisfied that the result in either event would not materially have increased the assets, or that it would have caused the assets to exceed the liabilities." The burden was on the plaintiff to satisfy the master not only that he was entitled to interest, but, if entitled to it, how much he was entitled to. Having failed to sustain the burden, his exceptions in regard to the matters of interest must be overruled.

On the whole case we think that the entry should be : exceptions to the master's report overruled, master's report confirmed, and bill dismissed with costs.

*So ordered.*