BERNHARD MAYER *v.* AARON E. DWINELL.

*Warranty on sale of goods.*

A vendee will be liable only for the real value of an inferior article warranted to him, if he has not accepted it unconditionally, or waived his claim on the warranty.

The facts reported by the auditor in this case, q. v., do not show such an acceptance or waiver.

Where there is a breach of a warranty on a sale of goods in which there was no fraud, the vendee will not be entitled to rescind the contract and return the goods, if there was no agreement that he might do so.

Where the vendor warrants the article sold, and agrees that if it does not prove good he will make it right or take the article back, it is ordinarily at his option whether the contract shall be rescinded or the vendee recompensed by a deduction from the price to the amount of his damages.

If, in the present case, the vendee had had that option his letters to the vendor q. v. did not show a rescission, and his only right was therefore to have the vendor's recovery reduced to the value of the article.

BOOK ACCOUNT.  The plaintiff's account was for one barrel of furniture varnish, in reference to which the auditor reported the following facts:

In May, 1854, one Folsom, a traveling agent of the plaintiff, called upon the defendant at Brattleboro, for the purpose of selling varnish.  The defendant was then using Tilden's varnish, which cost him two dollars and seventy-five cents per gallon, which Folsom examined.  After examining it he informed the defendant that he would sell him as good an article at a less price, and thereupon he entered into a written contract as follows:

"Brattleboro, May, 1854.  I have this day sold A. E. Dwinell one barrel No. 1 furniture varnish for two dollars and twenty-five cents per gallon, six months.  The varnish I warrant to be as good as the kind he is now using, and if it does not prove as good when he comes to use it, then I am to make it right with him when I come this way again, or take it back.

"BERNHARD MAYER.
"S. FOLSOM, Agent."

On the 12th of June the varnish was forwarded to the defendant, and was received by him about the 20th of June.  It was understood between Folsom and the defendant that the varnish might not be used and tested immediately on its receipt; and the last of July the defendant commenced, and he continued to use it from time to time in different ways and upon different kinds of wood, some stained and some painted, and in thus testing its

quality it was found to be a poor article and unfit for use in the defendant's business. The defendant used about five gallons in the manner above stated, and his object in so using it was to test its quality, which could have been ascertained by the use of a less quantity; but the defendant indulged the vain hope that he might by different experiments learn some manner of applying it which would render it of some value to him; but it was entirely unfit for the uses for which the defendant wanted it; and was worth not to exceed one dollar and fifty cents per gallon for other purposes.

It was insisted by the defendant that the contract excused him from giving notice to the plaintiff of his intention not to retain the varnish; that his right to rescind existed until the coming of Folsom, which did not occur until the last of October, at which time he had ceased to be the plaintiff's agent, but of this fact the defendant had not before been informed.

The defendant had satisfied himself of the bad quality of the varnish by the 1st of September, and the first notice given by him was by letter dated November 1st, 1854. The second notice given was by letter under date of December 22d, in answer to a letter to him dated December 20th. Said letters were as follows:

"Brattleboro, November 1st, 1854.

"Mr. Bernhard Mayer: Dear Sir — In May last your agent, Mr. Sewell S. W. Folsom, called on me to sell me some varnish. I was then using some of Tilden's varnish which cost two dollars and seventy-five cents per gallon. He said he would sell me a better article for two dollars and twenty-five cents, six months. This statement I can prove. I told him if he could I would take a barrel. He said he would have a barrel sent to me and I might try it, and if it did not prove as good, to keep it until he came along, and he would make it right. The varnish came and the barrel leaked. I bought a new tin can and put it into that, and commenced using it. I used several gallons, and found it very poor varnish. I could not get a decent finish on anything. It was curly and greasy, making furniture look very bad. Mr. Folsom was here a few days since. I showed him the varnish,— he said it was bad, the very smell of it condemned it. I showed him some furniture finished with it, and he said it was too bad. He

said it was not the varnish he sold me. What I have used has been quite a damage to me. I do not want what is left at any price. Will you tell me what to do with it. I am not willing to pay two dollars and twenty-five cents per gallon for what I have used, but am willing to do what is right and just under the circumstances. Mr. Folsom would give me no directions about it at all. He said he was an agent for a house in Boston now. Please write me on the subject. If you wish to know who you are dealing with as to truth and veracity, I presume you can find out by inquiring of Mr. Horace Brooks, of the firm of Perse & Brooks, paper dealers in your city.

" Yours respectfully, A. E. DWINELL."

" New York, December 20, 1854.

" Mr. E. A. Dwinell : Sir — Your bill sent on for collection by express, ninety-six dollars and eighty-one cents, has been returned unpaid. I should like to know why you refuse payment. My agent has just been at your place, and called upon you to settle, but could not find you at home. I shall expect you to attend to this forthwith, and remit the cash by express, adding fifty cents paid out to express. Yours respectfully,

" BERNHARD MAYER."

" Brattleboro, December 22d, 1854.

" Mr. Bernhard Mayer : Dear Sir — The varnish you sent me I never bought. I have used some of it on trial, and it has proved a damage to me. The ballance left, you can have whenever you see fit to pay said damage. Yours respectfully,

" A. E. DWINELL."

Upon the foregoing facts the auditor allowed the plaintiff's account in full, with interest to April 12th, 1856, at one hundred and five dollars and eight cents ; and he further reported that if the rule of damages should be the value of the varnish, the sum due to the plaintiff, including interest to April 12th, 1856, was seventy dollars and twenty-two cents ; and if the rule of damages should be the worth of the varnish to the defendant in his business, that there was nothing due the plaintiff.

The county court, September Term, 1856,— UNDERWOOD, J.,
presiding,— rendered judgment upon the report of the auditor in
favor of the defendant.   Exceptions by the plaintiff.

*Keyes & Howe*, for the plaintiff.

Under this contract the plaintiff was bound to do one of two
things, either to reduce the contract price to correspond with the
quality of the varnish, or receive it back from the defendant ; and
he was at full liberty to choose between these alternatives ; *Patchin*
v. *Swift*, 21 Vt. 292.

The defendant had a right under the contract to use a sufficient
quantity of the varnish to test its quality, and when he had dis-
covered that its quality was bad, it was his duty, within a reason-
able time thereafter, to have notified the plaintiff and offered to
return the varnish if he wished to rescind the contract ; *Fisher* v.
*Lamuda*, 1 Camp. 190 ; Chitty on Cont. 9 Amer. Ed. 460, 461,
and cases there cited ; *Kellogg* v. *Denslow*, 14 Conn. 411.

There was no offer on the part of the defendant to return the
varnish, for even if the court should be of opinion that the first
letter was a reasonable notice and an offer to return the varnish,
still we contend that the second letter was a retraction of that
offer, and a refusal to let it go out of his possession ; *Henderson* v.
*Ward*, 27 Vt. 434.

The defendant by using five gallons of the varnish has put it
out of his power to rescind the contract.   The parties could not
be put *in statu quo ;* 2 Kent Com. 480.

The defendant not having repudiated the contract, the conse-
quence is he has ratified it; *Kellogg* v. *Denslow*, 14 Conn. 411.

The rule of damages in this case should be the actual value of
the varnish, for the most that can be made of the case is a sale
with an express warranty, and a breach of it, and the law is well
settled that a mere breach of warranty, without fraud, is no answer
to an action for the price, but can only be used as a ground to
reduce the damages, and not as a means of rescinding the con-
tract; *Thornton* v. *Winn*, 12 Wheat. 183 ; *West* v. *Cutting*, 19
Vt. 536 ; *Brown* v. *Sayles*, 27 Vt. 232.

*R. W. Clark*, for the defendant, insisted that the effect of the

first letter of the defendant was to rescind that contract; that he had the right thus to rescind on account of the breach of the warranty; that his rescission was in due time, being before the expiration of the credit; and that the defendant was justified by the contract in delaying to give notice until the return of the agent.

The opinion of the court was delivered by

REDFIELD, CH. J. The only serious question in this case, as it seems to us, is whether the contract of sale was rescinded. The auditor certainly did not intend to find, in terms, any such rescission. For he held the defendant liable for the full amount of the stipulated price. And as the contract was a sale, with warranty, this result of the auditor must go upon the ground that the defendant had conducted in such a manner as not to be entitled to any rebate for breach of the warranty. This is only the case where the vendee accepts the article unconditionally.

But the facts reported seem to us scarcely to justify such a conclusion. The acknowledged inferiority of the article, and that the defendant at no time recognized its sufficiency, will prevent any such conclusion.

But it does seem very obvious that there was nothing in the case amounting to a rescission of the contract of sale.

1. The use of five gallons of the varnish in testing its quality, when that might have been done by the use of a less quantity, will of itself bar the defendant's right to rescind the sale, but will be no obstacle to his claim for a deduction in the price, as that may always be insisted upon, in the case of an express warranty, where the inferiority of the article is shown and nothing has been done to waive the claim on the warranty.

2. In case of warranty on the sale of goods, and no agreement to rescind and no proof of fraud, the party is not entitled to rescind; West v. Cutting, 19 Vt. 536.

3. There is in the present contract an alternative stipulation either to make good the deficiency of the article or take it back. Such an alternative is usually in the election of the party speaking. A promise in the alternative puts the alternative in the election of the promissor unless there is something to take the case out of the general rule; Patchin v. Swift, 21 Vt. 292.

4. There is no distinct offer to rescind the contract and return the article in this case. The first letter says the defendant is not willing to keep it at any price, and desires to know what to do with it, which may be regarded as a repudiation of what remains. But this letter says, "I am not willing to pay two dollars and twenty-five cents per gallon for what I have used, but am willing to do what is right and just under the circumstances." And the next letter expressly claims to hold the varnish till the damage is paid. So that altogether the defendant must be regarded as standing upon his warranty in his claim. And this, as it seems to us, is all that he could claim under the contract; *West* v. *Cutting,* 19 Vt. 536 ; *Brown* v. *Sayles,* 27 Vt. 227.

But, as we have before said, the breach of warranty will entitle the defendant to reduce the recovery to the value of the article which the auditor has reported in the present case.

Judgment reversed and judgment for the plaintiff for seventy dollars and twenty-two cents, and interest from April 12, 1856.