BROCKTON OLYMPIA REALTY CO. *vs.* SAMUEL T. LEE & others.

Bristol.    November 7, 1928. — March 26, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Contract,* Validity, Performance and breach. *Fraud. Waiver. Equity Jurisdiction,* Specific performance, Retention for assessment of damages. *Damages,* In suit in equity. *Equity Pleading and Practice,* Bill, Appeal.

Under an agreement by a lessee to assign his interest in the lease or to sublet it, he could elect which alternative he would perform and could be charged with a breach of the agreement only if he refused to perform either.

If, previous to the execution of a contract to assign or sublet a lease, the lessee, in stating his honest belief or best recollection as to the provisions of the lease, misrepresented its terms without intent to deceive the assignee and without attempting to prevent him from making an independent examination of it, and it appeared that the lease was available for examination by the assignee; that the assignee either investigated the truth of the lessee's statements or had an opportunity to do so; that no fraud or duress was practised upon the assignee; and that he did not enter into the contract rely-

ing on the lessee's misstatements, such misrepresentations, although they made the assignee more desirous and willing to enter into the contract, did not constitute a defence to a suit in equity by the lessee for specific performance of the contract.

It appearing in the suit in equity above described that, after certain other misstatements by the plaintiff had been called to his attention before the execution of the contract, he admitted his mistake; that a reduction in the price to be paid by the defendant then was agreed upon; that the defendant was satisfied with the reduction; and that the misstatements thereafter were of no consequence, a finding was warranted that the defendant had waived any right he might have had to rely in defence upon these misstatements.

The defendant having testified at the hearing of the suit in equity above described that a certain misrepresentation by the plaintiff would have made no difference in the defendant's performing the agreement, the misrepresentation was waived by the defendant and became immaterial.

If, previous to the execution of the contract above described, the plaintiff correctly stated to the defendant the amount of the annual rent under the lease, and the matter of payment of the rent was not raised by the defendant, a failure by the plaintiff to state that the rent had not been paid for certain months did not constitute fraud; the relation between the plaintiff and the defendant was that of seller and purchaser only.

Statements by the plaintiff in the suit in equity above described, that the tenants of the leased property were "very desirable," when in fact some of them had not paid their rent in full, were not representations of a material fact, but were an opinion of the plaintiff in the nature of "seller's talk," and did not constitute a ground of defence.

The bill in the suit in equity above described contained a prayer for general relief. The suit was referred to a master and thereafter was heard upon his report by a judge of the Superior Court. The evidence was not reported. By order of the judge, a final decree was entered dismissing the bill. Upon appeal by the plaintiff, it was *held,* that

(1) The questions, whether specific performance should be ordered and whether, if such relief should not be ordered, the suit should be retained for the assessment of damages, were matters resting in the sound discretion of the court;

(2) This court in the circumstances stood in the same position as the trial judge respecting those questions and could consider them without reference to the conclusion to which he had come;

(3) This court being of opinion that the plaintiff was not entitled to specific performance, but that his damages should be assessed in this suit instead of his having to resort to an action at law for that purpose, the decree was reversed and a decree was ordered to be entered directing the recommittal of the suit to the master for the assessment of damages.

It *was assumed* by this court that the prayer for general relief in such suit in equity was sufficient to authorize the assessment of damages.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 16, 1923, for specific performance of a contract.

The suit was ordered transferred to the Superior Court and was referred to a master, material facts found by whom are stated in the opinion. The suit was heard upon the master's report by *Williams,* J., by whose order there were entered an interlocutory decree confirming the report, and a final decree dismissing the bill. The plaintiff appealed.

*Lee M. Friedman,* (*P. D. Turner* with him,) for the plaintiff.

*T. F. O'Brien,* (*W. Flaherty* & *S. A. Lee* with him,) for the defendants.

CROSBY, J. This is a suit in equity for the specific performance by the defendants of a written agreement for the purchase of a lease or the subleasing of a certain parcel of land with the buildings thereon in the city of Brockton. The defence is that the defendants were induced to sign the agreement by fraud and misrepresentation. The case was referred to a master and thereafter was heard on the defendants' exceptions to the master's report. An interlocutory decree was entered confirming the report and overruling the exceptions, and a final decree was entered dismissing the bill. The case is before this court on the plaintiff's appeal from the final decree.

The evidence not being reported, the findings of fact made by the master must stand unless upon the report they are mutually inconsistent or contradictory and plainly wrong. *Ginn* v. *Almy,* 212 Mass. 486, 496. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. *Saulnier* v. *Benfield,* 265 Mass. 262. The material findings of fact are as follows (Lee and Davis being referred to as the defendants): In 1917, certain real estate situated in Brockton and owned by the Brockton Society of the New Jerusalem Church, hereinafter referred to as the Church Society, was leased by it to Edward A. Bardol and Edwin J. Dreyfus, and the lease was duly recorded. On July 6, 1920, the Church Society leased an adjoining parcel of land to the same lessees, by an instrument amending the original lease. This instrument, with a plan attached which referred to the land described in the original

lease as lot "A" and the land described in the second instrument as lot "B", was duly recorded.

On December 4, 1920, Bardol and Dreyfus entered into an agreement with the Olympia Theatres, Inc., a corporation owning and operating a chain of motion picture theatres, as a result of which the plaintiff corporation was organized, fifty per cent of the stock being owned by Bardol and Dreyfus and fifty per cent by the Olympia Theatres, Inc. By this agreement Bardol and Dreyfus assigned to the plaintiff the church lease. On lots "A" and "B" the plaintiff erected a theatre and a four-story brick building. Shortly after June, 1923, Dreyfus, who was an officer of the plaintiff corporation, made known to one Lider, an attorney, that the leasehold of the plaintiff was for sale and requested him to find a purchaser. Mr. Lider, acting as broker for Dreyfus, approached the defendants, who were engaged in the real estate and mortgage business. Mr. Lider was a nephew of the defendant Lee, and had previously acted as attorney for both defendants. At the request of Dreyfus one Burbank became a cobroker with Mr. Lider, and acted for the plaintiff in an effort to sell the leasehold to the individual defendants. After talking with Mr. Lider, the defendants became interested in the property and on two or three occasions examined it and made inquiries relative to tenants, rents, expenses of maintenance and other matters. On July 13, 1923, they went to Boston with Mr. Lider and met Dreyfus and Burbank. At this meeting Dreyfus said that he and Bardol would sell the lease for $875,000, but that Gordon and Shoolman, officers of the Olympia Theatres, Inc. (which owned fifty per cent of the leasehold) asked $1,000,000. The defendants and Mr. Lider questioned Dreyfus relative to various matters relating to the property. The answers of Dreyfus form part of the grounds of the defence of fraud and misrepresentation. An agreement was drawn, subject to the approval of Gordon and Shoolman, for the sale of the lease for $875,000, the defendants giving a check for $10,000 as a deposit. Subsequently Gordon and Shoolman refused to assent to the agreement, and on July 18, 1923, the defendants' check was returned.

Mr. Lider and Burbank continued negotiations with the defendants. Between July 18 and August 8 the defendants went to Boston and saw Gordon and there was conversation relative to the terms of the church lease, the terms of the subleases on the property, the rents paid by tenants, and the cost of maintenance, and certain figures prepared by the clerk of the plaintiff were given to the defendants. Another meeting was had on August 8, 1923, at which the defendants, Mr. Lider, Dreyfus, Burbank and Shoolman were present, and a memorandum was drawn by Mr. Lider stating that the lease was to be sold to the defendants for $887,500. The plaintiff's attorney examined the memorandum and expressed dissatisfaction with it, whereupon it was agreed that he should draft a final agreement and submit a copy to Mr. Lider. On August 11, Mr. Lider wrote him that the defendants would like to see the church lease. In his reply of August 13, the plaintiff's attorney enclosed a draft of the agreement he had prepared; this draft referred to the original lease, giving the book and page where it was recorded in the registry of deeds.

At another meeting held in Boston, on August 16, to which the subleases of the stores and offices in the building, a statement showing the annual rentals under the leases, and the church lease were brought by a representative of the plaintiff, there was a long discussion, the subleases were examined, and the defendants pointed out to Dreyfus that the terms of the subleases were different from certain statements previously made by him. He admitted that he had been mistaken and said he would allow for the mistakes by reducing his share of the purchase price $2,500; and Mr. Lider and Burbank agreed that they would allow the defendants $3,000 out of their commission by reason of such mistake. The master found that the defendants were satisfied with the allowance of $5,500 and that the discrepancies were of no consequence thereafter.

Before the meeting of August 16 the defendants asked many questions concerning the terms of the church lease; at that meeting the church lease was available for the defendants to examine if they so desired. No question was

raised by them or by the plaintiff concerning conditions respecting lot "B" as set forth in this lease. At the meeting Mr. Lider read the church lease and discussed it with the defendants; the latter stated they would like to have their attorney examine the draft agreement prepared by the plaintiff's attorney and, thereupon, Shoolman said if the defendants did not sign at once the agreement would not be carried out. After further discussion with Mr. Lider, the defendants signed the agreement. This agreement is the basis of the present bill.

On August 18, Mr. Lider wrote the plaintiff's attorney to prepare the necessary papers as soon as possible and that "The buyers intend to have Boston counsel to check up the agreements to be drawn." On August 29, he wrote Dreyfus that the defendants were ready to take over the property, and he requested Dreyfus to send all leases to tenants and assignment of the lease and mortgage to be signed by them, so that the papers could be examined by their attorney. Thereafter the plaintiff prepared a bill of sale, a sublease of the premises to the defendants, and a note and mortgage to be executed by the defendants. After the meeting of August 16, the defendants employed one O'Brien, an attorney, to examine the papers relative to the transfer of the property, and afterwards, at a meeting in Boston between the defendants and representatives of the plaintiff, this attorney stated that the rentals and terms of the subleases differed from what had previously been represented. It was explained that to rectify this mistake $5,500 had been allowed the defendants; after this explanation no further objection was made. Mr. O'Brien then stated that paragraph six of the amendment of the church lease provided that if the lessor sold lot "C" (the lot adjoining lot "B") within twenty-five years from April 1, 1920, "the lessees will pay to the lessor the same amount per square foot for the lot described in lot 'B' . . . as the lessor received per square foot for its land in said lot 'C' . . . and . . . during the balance of said lease and the balance of the term . . . the lessees shall pay to the lessor no rent for the land described in said lot 'B', but shall pay all taxes and other charges as provided in

Section 3 of said lease"; that this paragraph was highly prejudicial to the defendants, and that the plaintiff's representatives had told the defendants that the sole rental of the property was five per cent of the assessed valuation determined over a period of ten years and that such a statement, without disclosing the terms of paragraph six of the amendment, amounted to fraud and misrepresentation by the plaintiff. The representatives of the plaintiff replied that they presumed the defendants were familiar with the terms of the church lease before signing the agreement. Thereafter, on October 4, 1923, Mr. O'Brien wrote the plaintiff's attorney that unless the plaintiff could get the Church Society to eliminate the clause relative to lot "B," the defendants would refuse to carry out the agreement; that such refusal was because of the misrepresentation of the plaintiff as to this clause.

## I

The master found that until this suit was brought the only fraud and misrepresentation alleged by the defendants related to lot "B."

The contract expressly provided that "The party of the first part hereby agrees to assign all its right, title and interest in and to a certain lease dated February 26, 1917 for ninety-nine (99) years, or sublet said lease for full term except last thirty (30) days of said lease . . . ." By the terms of the church lease it could not be assigned by the lessee until the expiration of twenty years from its date without the assent of the lessor. On September 28, 1923, the plaintiff advised the defendants that it was unable to secure the assent of the Church Society to an assignment of the lease, and that a sublease of the premises would be executed in accordance with the terms of the agreement. The plaintiff had the right to elect which alternative would be performed. Where the promise to do one or the other of certain acts is in the alternative, the promissor is bound to perform in one of the methods specified, and, having the election, he can be charged with a breach only when he refuses to perform either. *Mill Dam Foundry* v. *Hovey*, 21 Pick. 417, 443, 444. *Mayer* v.

*Dwinell*, 29 Vt. 298.   *Foster* v. *Goldschmidt*, 21 Fed. Rep. 70, 73, 74.

The master found that the plaintiff was at all times ready, willing and able to perform the terms of the agreement but that the defendants were, on October 1, 1923, and at all times thereafter unwilling to do so unless and until the plaintiff obtained from the Church Society a modification of the church lease eliminating paragraph six of the amendment.   It is plain that this constitutes a breach of the contract by the defendants.   The contention that, as the plaintiff informed the defendants of the book and page where the church lease was recorded in the registry of deeds the defendants could have made an examination of its provisions, so that there was no misrepresentation because of previous misstatements cannot be sustained.   It has been held that one may recover for false representations of facts which he could have ascertained by an examination of records in the registry of deeds.   *Lynch* v. *Palmer*, 237 Mass. 150, and cases collected at page 152.

In the case at bar, however, there are circumstances besides the recorded lease which warranted a finding that the defendants were not misled as to the provisions of the church lease.   It is found that the lease was available at least on one occasion for examination by the defendants, and at that time was read by Mr. Lider and discussed by the defendants. There was no fiduciary relation between Dreyfus and the defendants: the relation that existed was the ordinary one between buyer and seller.   Where that relation exists "one bargaining with another must use reasonable diligence to discover for himself facts obvious to an ordinary observer, of which the means of knowledge are equally available to both parties."   *Holst* v. *Stewart*, 161 Mass. 516, 522.   *Brown* v. *Leach*, 107 Mass. 364, 368.   *Poland* v. *Brownell*, 131 Mass. 138.   The defendants cannot now successfully maintain that they were deceived by the representations, since the means of knowledge of the provisions of the church lease were available to them.   The master found that, while Dreyfus did not disclose the terms of the lease relative to lot "B," he made no attempt, and did not intend, to prevent the

defendants from examining it; that he was unfamiliar with the terms of the lease as he had not examined it for several years, and he gave the defendants his best recollection of its provisions and an opportunity to ascertain whether his recollections were correct; that the defendants did not rely upon the plaintiff for its terms, but frequently indicated their desire to examine it themselves; and that the plaintiff did nothing to dissuade them from placing reliance upon its terms. To maintain the defence of fraud and misrepresentation it must appear not only that the misrepresentations were made, but that they were relied on and deceived the defendants. *Harvey* v. *Squire*, 217 Mass. 411, 415. *Bartnett* v. *Handy*, 243 Mass. 446, 447, 448. *Butler* v. *Martin*, 247 Mass. 169, 173. *Willett* v. *Herrick*, 258 Mass. 585, 596, 597. *Wiley* v. *Simons*, 259 Mass. 159, 161. This necessary element is not present in the case at bar, as the master found the defendants did not intend to rely upon the plaintiff's representations.

## II

As to the contention of misrepresentation that the plaintiff "represented the rental received from the property to be $114,000 when in fact the rental is materially less than said amount," the master found that where these misstatements were brought to the attention of Dreyfus, he admitted the mistake and offered to reduce his share of the purchase price $2,500, and Mr. Lider and Burbank agreed to allow a further reduction of $3,000 from their commission; that the defendants were satisfied with this allowance of $5,500, and the discrepancy became of no consequence thereafter. It could be found that this action of the defendants amounted to a waiver. Whether there has been a waiver is usually a question of fact. *St. John Brothers Co.* v. *Falkson*, 237 Mass. 399.

## III

As to the contention of misrepresentation that the plaintiff "represented that the lessor in the church lease was required by the terms of said lease to join with the petitioners

or its successors in a new first mortgage in the sum of $400,000 up to fifty years from the date of the church lease, when in fact the church lease makes no such provision and requires that the first mortgage be paid off at the rate of two per cent a year," the master found that there was no intent on the part of Dreyfus to perpetrate a fraud on the defendants or so to misrepresent the facts relative to a new mortgage that the defendants would thereby purchase the property when they otherwise would not; that Dreyfus stated the facts as his honest belief, although the statement was not in accordance with the provisions of the church lease, and he made no endeavor to hide the actual provisions in the lease or to dissuade the defendants from making an independent examination or to induce them to take his opinion; that the defendants did not intend to rely on the plaintiff for the terms of the lease; and that the agreement was signed without any fraud or duress being practised on the defendants. The finding that the defendants did not intend to rely on such statement disposes of that contention. *Stewart* v. *Joyce*, 201 Mass. 301, 309. *Willett* v. *Herrick, supra,* and cases cited. *Wiley* v. *Simons, supra.*

## IV

Respecting the contention of misrepresentation that the plaintiff "represented that the title to the entire personal property was in the plaintiffs when in fact the title was in the lessors of the church lease until all outstanding encumbrances should be paid in full," the master found that the defendants believed the title to this property to be in the plaintiff, and that certain statements of Dreyfus tended to establish this belief; that both the defendants were more or less experienced in buying and selling real estate and knew that certain personal property attached to real estate becomes fixtures, and they were not deceived relative to that portion of the personal property which could be considered fixtures; that the statements were made in good faith with no intent to deceive, and the defendants, having been furnished with

the church lease, could have found that the statements were incorrect. The finding that the defendants were not deceived by this representation disposes of this claim, upon the authority of the cases last above cited.

## V

Respecting the contention that the plaintiff represented that the defendants were to receive the entire proceeds of a petition for damages pending against the city of Brockton for the taking of land by eminent domain, when in fact the lease provides for the apportionment of such damages between the lessors and the tenants, the master found that there was no intent to deceive; that Dreyfus and Gordon stated their recollection of the terms of the lease, which was available to the defendants and was read to them before the agreement was signed and did not purport to provide that all the damages could be kept by the defendants; it provided that the plaintiff agrees "to assign all their right, title and interest in a certain chose of action against the City of Brockton for damages arising out of a certain taking of land." The finding of the master that the defendants did not rely on the plaintiff's statements as to the provisions of the lease, and the further finding that it was read to them before it was signed, make it plain that this ground of defence is unsound.

## VI

The defendants contend that the cost of coal to heat the premises was in excess of what was represented to them. The master found that the figure stated to the defendants was the approximate cost of coal, and was lower than the actual cost for the year in question, but if it were a material misrepresentation it was waived as the defendant Lee testified that this discrepancy would have made no difference in his carrying out the agreement. In view of these findings the misrepresentation was immaterial. *St. John Brothers Co. v. Falkson, supra.*

## VII

With respect to the contention of misrepresentation that the plaintiff informed the defendants that the rental receipts for the theatre were at the rate of· $50,000 a year, when no rent had been paid during the months of May, June, July and August, 1923, the master found that the plaintiff correctly stated the rent as $50,000 a year; that the defendants did not raise the question whether the rent had been paid in full or not, and that "there was no fraud or misrepresentation practised on the defendants relative to the theatre rental." The finding that there was no misrepresentation as to the actual statement made is conclusive in the absence of a report of the evidence. Where as here the relationship is that of buyer and seller mere silence or failure to disclose known facts does not amount to fraud. *Phinney* v. *Friedman*, 224 Mass. 531, 533. *Windram Manuf. Co.* v. *Boston Blacking Co.* 239 Mass. 123, 126. *Willett* v. *Herrick, supra*, at pages 598, 603.

## VIII

The defendants were told by· the plaintiff that the tenants were "very desirable." The master found that this statement was correct except that at the time two tenants had not paid the rent in full. We are of opinion that this was not a representation of a material fact, but merely an expression of an opinion and in the nature of "seller's talk," and did not constitute a valid ground for avoiding the agreement. *Parker* v. *Moulton*, 114 Mass. 99, 100. *Deming* v. *Darling*, 148 Mass. 504.

## IX

The master in the concluding paragraph of his report states, "I find that the statements above referred to, made by the officers of the plaintiff to the defendants, made the defendants more desirous and willing to enter into the agreement, but I find that after the statements were made that the defendants either investigated the truth of the statements

or had ample opportunity to do so and did not enter into the agreement because of the reliance they placed on any particular statements made by the officers of the plaintiff corporation." In view of these findings it is manifest that none of the misrepresentations relied on can be held to be a defence to the agreement. To maintain the defence on the ground of misrepresentation it is necessary to show that the statements were relied on by the defendants and that they were deceived thereby. *Stewart* v. *Joyce, supra. Harvey* v. *Squire, supra. Willett* v. *Herrick, supra. Wiley* v. *Simons, supra.*

## X

Specific performance is not a matter of absolute right but rests in the sound discretion of the judge. Where it is refused jurisdiction may be retained for the assessment of damages. *Newburyport Institution for Savings* v. *Puffer,* 201 Mass. 41, 47.

In the present case the bill contains a prayer "For such other and further relief as to this court may seem meet and equitable . . . ." All the material facts have been found by the master. We assume that this prayer is sufficient to authorize the assessment of damages. It is argued by the plaintiff that if it is not entitled to specific performance the bill should be retained for the assessment of damages as all other issues have been tried at great length. Although a final decree dismissing the bill was entered by order of a judge of the Superior Court after hearing by him upon the master's report alone, this "court stands with reference to the facts found and the power and duty to draw inferences as did the single justice, unaffected by the conclusion reached by him. Where findings and inferences rest upon the observation of witnesses who have testified orally, the appellate court does not reverse unless plainly wrong; but where the facts are all documentary or are in a master's report, then this court on appeal has the same function as the single justice and draws the proper inferences for itself." *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 333, 334, and cases there collected. *Forman* v. *Gadouas,* 247 Mass. 207, 210,

211. *Caines* v. *Sawyer*, 248 Mass. 368, 373. *Nichols* v. *Atherton*, 250 Mass. 215, 217. *Anagnosti* v. *Almy*, 252 Mass. 492, 500, 501. Respecting the question, whether on the facts found the plaintiff is entitled to specific performance, or, if not so entitled, the case should be retained for the assessment of damages instead of the bill being dismissed and the plaintiff left to seek such damages as may have been sustained in an action at law, this court is in the same position as the trial judge, unaffected by the conclusion reached by him. In view of all the circumstances as disclosed by the record we are of opinion that the plaintiff should not have a decree for specific performance, but that the bill should be retained for the assessment of damages. The final decree dismissing the bill is reversed, and a decree is to be entered refusing the prayer for specific performance and directing that the case be recommitted to the master for the assessment of damages.

*Ordered accordingly.*